UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE, REGION 3
Michael A. Artis, Esquire (MA 4024)
Shining J. Hsu, Esquire (SH 9564)
Robert J. Schneider (RS 0595)
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 7 |
| Giuseppe Giudice and Teresa Giudice, | Case No. 09-39032 (MS) |
| Debtors. | |
| | Adversary No. _____ |
| Roberta A. DeAngelis, United States Trustee, | |
| | The Honorable Morris Stern |
| Plaintiff, | |
| v. | |
| Giuseppe Giudice and Teresa Giudice, | |
| Defendants. | |

**COMPLAINT OBJECTING TO DISCHARGE**

Roberta A. DeAngelis, the United States Trustee, Region 3 ("UST"), having a post office address at One Newark Center, Suite 2100, Newark, NJ, 07102, by and through counsel, by way of complaint objecting to the discharge of Giuseppe Giudice and Teresa Giudice ("Defendants"), respectfully alleges as follows:

1

## JURISDICTION AND VENUE

1. This is an adversary proceeding brought under 11 U.S.C. § 727(c) and Federal Rule of Bankruptcy Procedure 7001(4).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and (J).

4. Venue is proper pursuant to 28 U.S.C. § 1409.

5. The UST has standing to bring this complaint under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

6. This complaint is timely filed as the original deadline for filing a complaint objecting to discharge was extended by order of this Court pursuant to Federal Rule of Bankruptcy Procedure 4004(b) to March 1, 2010, then to May 3, 2010, and finally to September 3, 2010.

## FACTUAL BACKGROUND

*The Defendants' Original Filings*

7. On October 29, 2009, the Defendants filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, with accompanying Schedules, Statement of Financial Affairs, and other required documents.

8. The Defendants disclosed three properties on Schedule A: their primary residence at 6 Indian Lane, Towaco, NJ, valued at $1.7 million; 86 Pine Brook Road, Lincoln Park, NJ, valued at $200,000; and 49 Sylvia Lane, Stafford, NJ, valued at $337,000.

9. The Defendants disclosed interests in three businesses on Schedule B: 6 Glenwood Avenue Associates, LLC; 168 South Clinton Street Associates, LLC; and 17 Webster Place Associates, LLC.

10. The Defendants did not disclose any bank accounts on Schedule B.

11. The Defendants did not disclose any vehicles on Schedule B.

12. The Defendants did not disclose any "other contingent and unliquidated claims of every nature" on Schedule B.

13. The Defendants did not disclose any interest in "patents, copyrights, and other intellectual property" on Schedule B.

14. The Defendants did not disclose any "other personal property of any kind not already listed" on Schedule B.

15. The Defendants disclosed $6,127,454.51 in total unsecured debts on Schedule F.

16. The Defendants stated on Schedule I that as of the petition date Defendant husband received $3,250 in gross monthly income as owner of G&G Stucco & Stone Specialist, Inc., plus an additional $10,000 in monthly assistance from family members.

17. The Defendants further stated on Schedule I that as of the petition date Defendant wife was unemployed, but received $3,333.33 in monthly "income from Bravo."

18. Upon information and belief, Defendant wife is one of the stars of the reality television show "Real Housewives of New Jersey," which has aired on the Bravo cable television network since May 2009.

19. The Defendants indicated on Schedule I that as of the petition date they did not anticipate any increase in income within the year following the filing of their petition.

20. The Defendants signed the Declaration Concerning Debtor's Schedules attesting under penalty of perjury that the information contained in the Schedules was true and correct.

21. The Defendants disclosed on their Statement of Financial Affairs that their gross income from employment, trade, profession, or operation of business totaled $575,000 in 2008, $598,000 in 2007, and $312,000 in 2006.

22. The Defendants did not disclose on their Statement of Financial Affairs any year-to-date gross income for 2009.

23. The Defendants did not disclose on their Statement of Financial Affairs any income other than from employment, trade, profession, or operation of business during the two years preceding the filing of their petition.

24. The Defendants disclosed on their Statement of Financial Affairs interests in five businesses: 168-170 South Clinton Street Associates, LLC; 17 Webster Place Associates, LLC; 6 Glenwood Avenue Associates, LLC; G&G Realty Holding, Inc.; and G&G Stucco & Stone Specialist, Inc.

25. The Defendants indicated on their Statement of Financial Affairs that, during the year preceding the filing of their petition, they made no gifts, incurred no losses, and transferred no assets outside of the ordinary course of business.

26. The Defendants signed the statement at the end of the Statement of Financial Affairs attesting under penalty of perjury that the information contained in the Statement of Financial Affairs was true and correct.

*The Defendants' Initial Amendments*

27. In a letter dated November 18, 2009, that was mailed to John Sywilok, Esq., the panel trustee appointed in this case (the "Case Trustee"), and was also mailed to the Defendants' attorney, counsel to secured creditor Wachovia Bank, N.A. raised several discrepancies in the Defendants' Schedules and Statement of Financial Affairs.

28. The discrepancies included, but were not limited to, the Defendants' failure to disclose ownership of 393 Lexington Avenue, Clifton, NJ and 399 Lexington Avenue, Clifton, NJ.

29. On November 20, 2009, the Case Trustee sent a letter to the Defendants requesting copies of their federal tax returns for 2006, 2007, and 2008; documents related to all real property they owned; a list of their jewelry; 2007 and 2008 federal tax returns for the entities identified on the Schedules filed with the petition; copies of bank statements and cancelled checks for the Defendants' bank accounts for the year leading up to the filing of the petition; a list of all cash payments exceeding $750 made during the year preceding the petition; copies of any contracts with Bravo Entertainment; and copies of paystubs from April through November 2009.

30. Thereafter, on December 17, 2009, the Defendants amended several Schedules and their Statement of Financial Affairs.

31. Amended Schedule A added the previously undisclosed properties at 393 Lexington Avenue, Clifton, NJ and 399 Lexington Avenue, Clifton, NJ.

32. Amended Schedule B added the Defendant husband's previously undisclosed checking account at Community Bank of Bergen County with a balance of $1,000.

33. Amended Schedule B added three businesses that were not disclosed on the initial Schedules: G&G Realty Holding, Inc.; G&G Stucco & Stone Specialist, Inc.; and 1576 Maple Avenue Associates, LLC.

34. In addition, Amended Schedule B added three vehicles and a boat, which had not previously been disclosed: a 2007 Cadillac Escalade V-8; a 2005 Ford F350 Long Bed Truck; a Kawasaki Quad; and a 2004 Sea-DooBRP Sport Boat.

35. Amended Schedule F increased the Defendants' total unsecured debts to $7,165,832.43.

36. Amended Schedule G added a previously undisclosed lease for a 2005 Maserati Quattroporte.

37. The Defendants amended Schedule I to disclose that as of the petition date Defendant wife had been employed for one month as an "Actress/TV Personality" by Sirens Media, LLC, with $7,083.33 in gross monthly income.

38. The Defendants signed the Declaration Concerning Debtor's Schedules attesting under penalty of perjury that the information contained in the Amended Schedules was true and correct.

39. The Amended Statement of Financial Affairs added a previously-undisclosed interest in a business named 1576 Maple Avenue Associates, LLC.

6

40. The Defendants signed the statement at the end of the Amended Statement of Financial Affairs attesting under penalty of perjury that the information contained in the Amended Statement of Financial Affairs was true and correct.

*The Meeting of Creditors*

41. The meeting of creditors pursuant to 11 U.S.C. § 341(a) ("Meeting of Creditors") was held on December 23, 2009.

42. The Defendants testified under oath that the information contained in the Petition, Schedules, and Statement of Financial Affairs filed as of that date was true and correct.

43. The Defendant wife testified that she does not hold interests in any businesses.

44. The Defendants testified regarding the contents of documents purported to be their 2006, 2007, and 2008 individual federal income tax returns, which had been submitted to the Case Trustee prior to the Meeting of Creditors.

*The Defendants' Subsequent Amendments*

45. On January 8, 2010, the Defendants filed a second Amended Statement of Financial Affairs which, contrary to the Defendants' testimony at the Meeting of Creditors and the disclosures made in the initial and amended Statement of Financial Affairs, indicated that they had received no gross income from employment, trade, profession, or operation of a business, during the two years preceding the filing of their petition.

46. The Defendants signed the statement at the end of the second Amended Statement of Financial Affairs attesting under penalty of perjury that the information contained in the second Amended Statement of Financial Affairs was true and correct.

47. On March 2, 2010, the Defendants filed a second Amended Schedule F and a third Amended Statement of Financial Affairs.

48. The Second Amended Schedule F increased the Defendants' total unsecured debts to $7,192,723.47.

49. Of the total unsecured debt listed on the second Amended Schedule F, $89,254.81 was attributable to consumer credit cards and store credit at Bloomingdale's, Neiman Marcus, and Nordstrom.

50. The Defendants signed the Declaration Concerning Debtor's Schedules attesting under penalty of perjury that the information contained in the second Amended Schedule F was true and correct.

51. The third Amended Statement of Financial Affairs made no changes to the Defendants' disclosures regarding either the businesses they owned or their pre-petition business income.

52. The Defendants signed the statement at the end of the third Amended Statement of Financial Affairs attesting under penalty of perjury that the information contained in the third Amended Statement of Financial Affairs was true and correct.

***The Defendant Wife's Rule 2004 Examination***

53. On April 23, 2010, an examination held pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Examination") was conducted of the Defendant wife.

54. The Defendant wife testified that she has a bank account with Lakeland Bank, and she is the only person with signature authority on that account.

55. Defendant wife further testified that she owned a previously undisclosed business by the name of TG Fabulicious, LLC, of which she is the sole member.

56. The Defendant wife also testified that she had a previously undisclosed deal with Hyperion, an imprint of Buena Vista Books, Inc., to publish a previously undisclosed cookbook titled "Skinny Italian."

### *The Defendant Husband's Rule 2004 Examination*

57. On April 23, April 30, and May 26, 2010, a Rule 2004 Examination was conducted of the Defendant husband.

58. The Defendant husband testified that prior to his employment with G&G Stucco & Stone Specialist, Inc., for a three- to four-year period beginning in 2005 he withdrew funds from his LLCs as needed.

59. The Defendant husband affirmed his signature on a mortgage application dated July 23, 2008, which indicated that he received $54,269 in monthly income from "G&G Stucco & Stone."

60. The Defendant husband testified that the IRS informed him "three or four or five months ago" that the purported 2006, 2007, and 2008 individual income tax returns, which had previously been presented to the Case Trustee, were never actually filed.

61. The Defendant husband also testified that he was the sole member of a previously undisclosed business named 1601 Maple Avenue Associates, LLC, which

owns a parcel of real estate in Hillside, NJ, and collects rents from two commercial businesses operating at that location.

***Defendants' Document Production Subsequent to the Rule 2004 Examinations***

62. The Defendant wife produced a Certificate of Formation from the State of New Jersey Department of the Treasury indicating that a business named TG Fabalicious, LLC, was incorporated on April 20, 2009, with the only member listed as Teresa Giudice.

63. A Business Entity Amendment Filing with the State of New Jersey Division of Revenue on June 5, 2009, amended the business's name to TG Fabulicious, LLC.

64. Upon information and belief, TG Fabulicious, LLC operates an online boutique that sells fashion items on a website entitled www.tgfabulicious.com.

65. The Defendant wife produced Lakeland Bank account statements in the name of TG Fabalicious, LLC, for the period April 21, 2009, to January 29, 2010.

66. The Lakeland Bank account statements reveal deposits of $106,819.90 during the period April 21, 2009, to October 31, 2009, and $105,887.04 in debit card purchases, checks, and other deductions during the same period.

67. The Lakeland Bank account statements also reveal deposits of $192,620.90 during the three months after the filing of the Defendants' petition.

68. Upon information and belief, the Defendant wife uses the Lakeland Bank account as her own personal account, and commingles moneys she receives from TG Fabulicious, LLC's sales with moneys she receives from other sources.

69. The Defendants also produced a book contract between Hyperion and the Defendant wife, pursuant to which the Defendant wife was to receive an initial advance

of $250,000, an additional advance of $30,000, and royalties based on sales of her cookbook.

70. The Defendant wife's contract with Hyperion was dated October 22, 2009, approximately one week prior to the petition date, and was signed by the Defendant wife on November 18, 2009.

71. To date, the Defendants have not filed amended schedules that disclose the existence of the book "Skinny Italian," the publishing deal with Hyperion, Defendant wife's ownership of TG Fabulicious, LLC, or Defendant husband's ownership of 1601 Maple Avenue Associates, LLC.

## FIRST COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(A) FOR KNOWINGLY AND FRAUDULENTLY MAKING A FALSE OATH OR ACCOUNT

72. The UST repeats and realleges each and every allegation contained in paragraphs 1 through 71 as if set forth herein at length.

73. The Defendants signed statements attesting, under penalty of perjury, that the information on the Petition, Schedules, and Statement of Financial Affairs was true and correct.

74. The Defendants testified at their Meeting of Creditors and their Rule 2004 Examinations under penalty of perjury.

75. The original Schedule B, which the Defendants attested under penalty of perjury was true and correct, failed to disclose Defendant husband's bank account, two pieces of real property, the Defendants' vehicles, the Defendant wife's pending book

11

deal, and certain business interests including TG Fabulicious, LLC and 1601 Maple Avenue Associates, LLC.

76. The original Schedule I, which the Defendants attested under penalty of perjury was true and correct, stated that Defendant wife was unemployed with no likelihood of an increase in income in the near future, and understated her true income.

77. The Defendants knew that the information contained in their originally-filed Schedules and Statement of Financial Affairs was not true and correct.

78. Even after multiple amendments to their Schedules and Statement of Financial Affairs, the Defendants still have not filed any amendments disclosing the existence of the book "Skinny Italian," the Defendant wife's publishing deal with Hyperion, the Defendant wife's interest in TG Fabulicious, LLC, and the Defendant husband's interest in 1601 Maple Avenue Associates, LLC.

79. The Defendant wife testified at the Meeting of Creditors that she does not have any interests in any businesses, which was a false oath in light of her subsequent disclosure of her ownership of TG Fabulicious, LLC.

80. The Defendant husband testified at the Meeting of Creditors that the filings with the Court had disclosed all of his business interests, which was a false oath in light of his subsequent disclosure of his interest in 1601 Maple Avenue Associates, LLC.

81. The Defendants' initial and amended Schedule I indicated that the Defendant wife had no income on the petition date other than income from Sirens Media, which was a false oath in light of documents indicating that she had pre-petition income from operations of TG Fabulicious, LLC.

82. The Defendants intentionally did not disclose the existence of the undisclosed assets in order to conceal their existence from creditors and the Case Trustee.

83. As a result, the Defendants have knowingly and fraudulently made false oaths in this case in the form of false statements on sworn documents filed with the Court and false sworn testimony provided at the Meeting of Creditors.

84. Wherefore, the UST respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(4)(A) and providing for such other relief as is just.

## SECOND COUNT

**OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A) FOR TRANSFERRING, REMOVING, DESTROYING, MUTILATING, OR CONCEALING, WITH INTENT TO HINDER, DELAY, OR DEFRAUD CREDITORS OR THE CASE TRUSTEE, PROPERTY OF THE DEFENDANTS WITHIN ONE YEAR BEFORE THE DATE OF FILING THE PETITION**

85. The UST repeats and realleges each and every allegation contained in paragraphs 1 through 84 as if set forth herein at length.

86. The contract between Defendant wife and Hyperion indicates that, during the year preceding the filing of the petition, the Defendant wife was in negotiation of a book publishing deal for which she was to receive a $250,000 initial advance, a $30,000 additional advance, and royalties based on sales of her cookbook "Skinny Italian."

87. Neither the Defendant wife's cookbook nor the deal to publish it was disclosed in any filings with the Court or in her testimony at the Meeting of Creditors.

88. The certificate of formation and Lakeland Bank statements for TG Fabulicious, LLC indicate that, during the year preceding the filing of the petition, the

13

Defendant wife owned and operated a business that had a bank account into which over $100,000 was deposited in the six months preceding the petition.

89. Upon information and belief, money received during the year preceding the petition by Defendant wife from several sources was transferred to the TG Fabulicious, LLC Lakeland Bank account and commingled with other funds to the extent that it is impossible to separate property of Defendant wife from property of TG Fabulicious, LLC.

90. Neither the Defendant wife's interest in TG Fabulicious, LLC, the Lakeland Bank account of TG Fabulicious, LLC, nor the income derived from TG Fabulicious, LLC were disclosed in any filings with the Court or in her testimony at the Meeting of Creditors.

91. The Defendant husband testified at his Rule 2004 Examination that he is the sole member of 1601 Maple Avenue Associates, LLC.

92. Upon information and belief, 1601 Maple Avenue Associates, LLC had income during the year preceding the filing of the Defendants' petition.

93. Neither the Defendant husband's interest in 1601 Maple Avenue Associates, LLC nor any income derived from its operations was disclosed in any filings with the Court or in his testimony at the Meeting of Creditors.

94. The Defendants knew of the existence of the cash and assets they failed to disclose, yet they knowingly and fraudulently failed to disclose them on their Schedules and amendments thereto, Statement of Financial Affairs and amendments thereto, and testimony at the Meeting of Creditors.

95. The Defendants intentionally did not disclose the existence of the undisclosed assets in order to conceal their existence from creditors and the Case Trustee.

96. As a result, the Defendants transferred, removed, destroyed, mutilated, or concealed, with intent to hinder, delay, or defraud creditors or the Case Trustee, property of the Defendants within one year before the date of filing of the petition.

97. Wherefore, the UST respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(2)(A) and providing for such other relief as is just.

## THIRD COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(B) FOR TRANSFERRING, REMOVING, DESTROYING, MUTILATING, OR CONCEALING, WITH INTENT TO HINDER, DELAY, OR DEFRAUD CREDITORS OR THE CASE TRUSTEE, PROPERTY OF THE ESTATE AFTER FILING OF THE PETITION

98. The UST repeats and realleges each and every allegation contained in paragraphs 1 through 97 as if set forth herein at length.

99. Since the petition was filed, the book publishing deal with Hyperion was signed, the cookbook "Skinny Italian" was released, and, upon information and belief, the initial $250,000 advance was paid to the Defendant wife.

100. In addition, the Lakeland Bank account statements produced by the Defendants reveal that TG Fabulicious, LLC had total deposits of over $190,000 during the first three months after the petition was filed.

101. Upon information and belief, the book "Skinny Italian," the Hyperion book deal, TG Fabulicious, LLC, and 1601 Maple Avenue Associates, LLC are valuable estate assets.

102. The Defendants knew of the existence of these assets as of the petition date, yet they knowingly and fraudulently failed to disclose them on their Schedules and amendments thereto, Statement of Financial Affairs and amendments thereto, and testimony at the Meeting of Creditors.

103. The Defendants intentionally did not disclose the existence of the undisclosed assets in order to conceal their existence from creditors and the Case Trustee.

104. As a result, the Defendants transferred, removed, destroyed, mutilated, or concealed, with intent to hinder, delay, or defraud creditors or the Case Trustee, valuable property of the estate after the date of the filing of the petition.

105. Wherefore, the UST respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(2)(B) and providing for such other relief as is just.

## FOURTH COUNT

**OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(3) FOR CONCEALING, DESTROYING, MUTILATING, FALSIFYING, OR FAILING TO KEEP OR PRESERVE RECORDED INFORMATION, INCLUDING BOOKS, RECORDS, AND PAPERS, FROM WHICH THE DEFENDANTS' FINANCIAL CONDITION OR BUSINESS TRANSACTIONS MIGHT BE ASCERTAINED**

106. The UST repeats and realleges each and every allegation contained in paragraphs 1 through 105 as if set forth herein at length.

107. The Defendants presented documents to the Case Trustee that purported to be their 2006, 2007, and 2008 individual income tax returns.

108. However, upon information and belief, the Defendants have not filed individual income tax returns for several years.

109. In addition, the Defendants have not produced financial statements and bank statements for 1601 Maple Avenue Associates, LLC.

110. Furthermore, the Lakeland Bank account documents provided to date indicate that the Defendant wife commingles funds from several sources, making it impossible to separate the Defendant wife's financial activities from those of TG Fabulicious, LLC.

111. As a result, the Defendants have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information from which their financial condition or business transactions might be ascertained.

112. Wherefore, the UST respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(3) and providing for such other relief as is just.

## FIFTH COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(5) FOR FAILURE TO EXPLAIN SATISFACTORILY ANY LOSS OF ASSETS OR DEFICIENCY OF ASSETS TO MEET DEFENDANTS' LIABILITIES

113. The UST repeats and realleges each and every allegation contained in paragraphs 1 through 112 as if set forth herein at length.

114. The Defendants' Schedule F, as amended, reveals over $89,000 in credit card debt.

115. Schedule B, as amended, disclosed only $1,000 in the Defendant husband's checking account, as well as household goods, furnishings, clothing, and jewelry totaling only $24,550.

116. The Statement of Financial Affairs, as amended, did not disclose any gifts, losses, or transfers of assets during the year preceding the filing of the petition.

117. As a result, the Defendants have failed to explain satisfactorily why all of the cash and assets obtained by the Defendants from their credit cards are not now available to meet the Defendants' liabilities.

118. In addition, upon information and belief, most of the $106,819.90 deposited into TG Fabulicious, LLC's Lakeland Bank pre-petition was received by the Defendant wife in her personal capacity, and was not derived from the sales of TG Fabulicious merchandise.

119. The Defendants have not satisfactorily explained why the money received by the Defendant wife under her contract with Bravo, through her operation of TG Fabulicious, LLC, and other sources over the past several years is not available to meet the Defendants' liabilities.

120. Also, as of the petition date, the Defendant husband operated at least seven businesses, one of which was a stucco and stone contractor and the rest of which owned rental properties with paying retail and residential tenants.

121. The Defendant husband testified at his Rule 2004 Examination that he withdrew funds from his businesses as needed.

122. The Defendant husband affirmed his signature on a 2008 document which indicated that he received $54,269 in monthly income from his stucco and stone contractor business.

123. Upon information and belief, the operation of the Defendant husband's businesses generated considerable amounts of money over the past several years, some portion of which was received by the Defendants.

124. The Defendants have not satisfactorily explained why the money generated from the operation of the Defendant husband's businesses is not available to meet the Defendants' liabilities.

125. Wherefore, the UST respectfully requests that this Court enter judgment denying the Defendants' discharge under 11 U.S.C. § 727(a)(5) and providing for such other relief as is just.

>Respectfully submitted,
>
>ROBERTA A. DeANGELIS
>UNITED STATES TRUSTEE
>REGION 3
>
>By:  /s/ Michael A. Artis
>     Michael A. Artis
>     Trial Attorney
>
>     /s/ Shining J. Hsu
>     Shining J. Hsu
>     Trial Attorney
>
>     /s/ Robert J. Schneider
>     Robert J. Schneider
>     Trial Attorney

Dated: September 2, 2010